IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | |
|---|---|
| YUSUF BROWN-AUSTIN, | Case No. 1:23-cv-478 |
| Plaintiff, | Judge Matthew W. McFarland |
| v. | |
| ANNETTE CHAMBERS-SMITH, et al., | |
| Defendants. | |

### ORDER AND OPINION

This matter is before the Court on Defendants Doug Fender and Assistant Investigator Wyman's Motion to Dismiss (Doc. 5), Defendants Annette Chambers-Smith and Chris Lambert's Motion to Dismiss (Doc. 6), and Defendant Core Civic Corporation's Motion for Joinder and Dismissal (Doc. 27). Plaintiff filed responses in opposition to Defendants Annette Chambers-Smith and Chris Lambert's motion (Plaintiff's Response to Chambers-Smith and Lambert's Motion, Doc. 15) and Defendants Doug Fender and Assistant Investigator Wyman's motion (*See* Plaintiff's Response to Fender and Wyman Motion, Doc. 16). Those Defendants then filed Replies in Support (Docs. 17, 19). Plaintiff failed to timely respond to Defendant Core Civic Corporation's motion. *See* S.D. Ohio Civ. R. 7.2(a)(2). Thus, these matters are ripe for the Court's review.

For the reasons below, Defendants Doug Fender and Assistant Investigator Wyman's Motion to Dismiss (Doc. 5), Defendants Annette Chambers-Smith and Chris Lambert's Motion to Dismiss (Doc. 6), and Defendant Core Civic Corporation's Motion

for Joinder and Dismissal (Doc. 27) are all **GRANTED**.

## ALLEGED FACTS

In 2017, Plaintiff was incarcerated at the Northeastern Ohio Correctional Center ("NEOCC"). (Compl., Doc. 1, ¶ 2.) NEOCC is operated by Defendant Core Civic Corporation. (*Id.*) Defendant Doug Fender is a warden at NEOCC and is "responsible for the day-to-day operations of the prison." (*Id.* at ¶ 11.) Fender supervises Defendant Deputy Warden. (*Id.* at ¶ 12.) Defendant Unit Manager Douglass is "responsible for the day-to-day affairs of the prisoners in his Unit" at NEOCC. (*Id.* at ¶ 13.) Defendant Assistant Investigator Wyman is "responsible for investigating crimes at" NEOCC. (*Id.* at ¶ 15.) Defendant Annette Chambers-Smith is the Director of the Ohio Department of Rehabilitation and Correction ("ODRC"). (*Id.* at ¶ 9.) And, Defendant Chris Lambert is the Chief Inspector for ODRC and is "responsible for answering all grievances made by the prisoners." (*Id.* at ¶ 10.)

During Plaintiff's incarceration, Core Civic failed to sufficiently staff NEOCC. (Compl., Doc. 1, ¶¶ 4, 17.) So, Deputy Warden approached Plaintiff—a member of the Crips gang—and other high-ranking gang members incarcerated at NEOCC with a proposition. (*Id.* at ¶¶ 1, 4.)[1] Deputy Warden entered an agreement with Plaintiff and the other gang members, wherein Deputy Warden promised the gang members "free reign" of NEOCC so long as the gang members "regulate[d] the prisoners." (*Id.* at ¶ 4.) The parties agreed to the arrangement, which remained in place throughout changes in

---

[1] Plaintiff alternatively alleges that "then warden Larsose, Assistant Warden Hurst, and Chief of Security Vintell" led this meeting. (Compl., Doc. 1, ¶ 16.)

NEOCC leadership. (*Id.* at ¶ 16.)

At first, Plaintiff willingly participated in the arrangement. (*See* Compl., Doc. 1, ¶¶ 20-25.) But, in June 2022, Plaintiff refused to retrieve a loaded gun as ordered by a NEOCC administrator. (*Id.* at ¶ 26.) Around this time, a fight broke out in the cell block that Plaintiff "supervised." (*Id.* at ¶ 27.) Following these events, Plaintiff was placed in segregation. (*Id.* at ¶¶ 28-29.) In response, Plaintiff threatened to file a grievance. (*Id.* at ¶ 40.) Plaintiff's brother also reported these transgressions to the Ohio State Highway Patrol—which is tasked with investigating prison crimes. (*Id.* at ¶¶ 29, 40.)

As these events unfolded, Defendant Warden found that Plaintiff could "not be trusted." (Compl., Doc. 1, ¶ 30.) So, at the order of "Defendant Warden David Bobby," Plaintiff was transferred to the Ohio State Penitentiary ("OSP"). (*Id.* at ¶ 31.) Plaintiff received no hearing or notice before the transfer. (*Id.* at ¶¶ 31-32, 40.) Plaintiff was later transferred to the Southern Ohio Correctional Facility and then given a Rules Infraction Board hearing. (*Id.* at ¶ 33.)

## PROCEDURAL POSTURE

Plaintiff now brings individual and official capacity 42 U.S.C. § 1983 claims against Chambers-Smith, Lambert, Fender, Douglass, and Wyman for First Amendment Retaliation and Fourteenth Amendment Procedural Due Process violations. (Compl., Doc. 1, ¶¶ 37-50.) Plaintiff also brings § 1983 claims against Core Civic and Deputy Warden in his individual capacity. (*Id.*) Plaintiff only seeks monetary damages. (*Id.* at Pg. ID 17.)

On October 16, 2023, Fender and Wyman moved to dismiss the claims against

them. (*See* Fender and Wyman Motion to Dismiss, Doc. 5.) On November 6, 2023, Chambers-Smith and Lambert also moved to dismiss the claims against them. (Chambers-Smith and Lambert Motion to Dismiss, Doc. 6.) On July 25, 2024, Core Civic moved to join the previous motions to dismiss and provided supplemental arguments for its dismissal from this case. (*See* Core Civic Joinder Motion, Doc. 27.) Additionally, on August 19, 2024, the Court dismissed Douglass and Deputy Warden without prejudice for failure of service. (*See* Dismissal Order, Doc. 30.)

## LAW

The Federal Rules of Civil Procedure allow, upon motion, the dismissal of a complaint "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss tests the plaintiff's cause of action as stated in a complaint. *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). Courts accept all allegations of material fact as true and must construe such allegations in the light most favorable to the non-moving party. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007). But, Courts are not bound to do the same for a complaint's legal conclusions. *Id.* at 555.

Thus, surviving a motion to dismiss is a matter of pleading sufficient factual content. *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009)). A claim for relief must be "plausible on its face." *Iqbal*, 556 U.S. at 678. That is, the complaint must lay out enough facts for a court to reasonably infer that the defendant wronged the plaintiff. *16630 Southfield*, 727 F.3d at 502. A complaint that lacks such plausibility warrants dismissal. *Iqbal*, 556 U.S. at 678.

## ANALYSIS

Plaintiff brings § 1983 claims for First Amendment Retaliation and Fourteenth Amendment Procedural Due Process against Fender, Wyman, Chambers-Smith, and Lambert (collectively, the "Individual Defendants") in their official and individual capacities. (Compl., Doc. 1, ¶¶ 37-50.) Plaintiff also brings § 1983 claims for First Amendment Retaliation and Fourteenth Amendment Procedural Due Process against Core Civic. (*See id.*) Because Individual Defendants and Core Civic's arguments for dismissal are substantially similar (*see* Motions to Dismiss, Docs. 5, 6), the Court will review them together. The Court will first consider Plaintiff's claims against Individual Defendants in their individual capacities.

I. **Individual Capacity § 1983 Claims**

"To successfully state a claim under 42 U.S.C. § 1983, a plaintiff must identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law." *Russo v. Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992) (citation omitted).

Plaintiff maintains that Individual Defendants violated his First and Fourteenth Amendment rights when they transferred him to OSP. (*See* Compl., Doc. 1, ¶¶ 37-50.) Individual Defendants argue that Plaintiff failed to sufficiently allege any constitutional violation. (Fender and Wyman Motion to Dismiss, Doc. 5, Pg. ID 32-40; Chambers-Smith and Lambert Motion to Dismiss, Doc. 6, Pg. ID 52-56.) And, even if Plaintiff had alleged a legitimate violation, Individual Defendants argue that Plaintiff failed to show they participated in the deprivation of those rights. (Fender and Wyman Motion to Dismiss,

5

Doc. 5, Pg. ID 29-31; Chambers-Smith and Lambert Motion to Dismiss, Doc. 6, Pg. ID 49-51.) The Court will first consider whether a constitutional violation has occurred.

### a. First Amendment Retaliation

Plaintiff alleges that he experienced First Amendment retaliation when he was transferred to OSP after threatening to file a grievance. (Compl., Doc. 1, ¶¶ 37-44.) To establish a retaliation claim in the prison context, an inmate must show that "(1) the prisoner engaged in protected conduct; (2) an adverse action was taken against the prisoner that would deter a prisoner of ordinary firmness from continuing to engage in that conduct; and (3) a causal connection exists between the first two elements—i.e., the prisoner's protected conduct motivated, at least in part, the adverse action." *Jones v. Caruso*, 421 F. App'x 550, 553 (6th Cir. 2011) (quotation omitted). Individual Defendants argue that Plaintiff has failed to show all three elements. (Fender and Wyman Motion to Dismiss, Doc. 5, Pg. ID 32-35; Chambers-Smith and Lambert Motion to Dismiss, Doc. 6, Pg. ID 52-53.)

Considering the first element, Plaintiff's threat to file a grievance may constitute protected conduct under the First Amendment. It is well established that filing a non-frivolous grievance against prison personnel is protected conduct under the First Amendment. *See Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (citation omitted.) But, the Sixth Circuit has not determined "whether merely threatening to file a grievance constitutes protected activity." *Pasley v. Conerly*, 345 F. App'x 981, 984 (6th Cir. 2009). That said, the Sixth Circuit has noted in dicta that there is a "possibility that, had [a] prisoner threatened to file legitimate grievances, the conduct would [be] protected." *Id.* Thus,

6

Plaintiff's threat to file an arguably legitimate grievance may constitute protected conduct under the First Amendment.

But, even if Plaintiff's actions constituted protected conduct, he has not shown that an adverse action was taken against him in response to that conduct. "As a general matter, a prison official's decision to transfer a prisoner from the general population of one prison to the general population of another is not considered adverse." *LaFountain v. Harry*, 716 F.3d 944, 948 (6th Cir. 2013). But, "a prison transfer . . . can be an adverse action if that transfer would result in foreseeable, negative consequences to the particular prisoner." *Hill*, 630 F.3d at 474. For example, the Sixth Circuit has held that a foreseeable, negative consequences of a transfer may include the loss of a high-paying prison job needed to pay for legal assistance. *Siggers-El v. Barlow*, 412 F.3d 693, 701-02 (6th Cir. 2005). Plaintiff does not allege or argue that there were any foreseeable, negative consequences resulting from his transfer. (*See* Compl., Doc. 1; Responses, Docs. 15-16.) Thus, Plaintiff has failed to meet the second element of a First Amendment Retaliation claim.

As Plaintiff has not alleged First Amendment retaliation, his § 1983 claim on this alleged constitutional violation must fail.

### b. Fourteenth Amendment Procedural Due Process Violation

Plaintiff next alleges that his procedural due process rights were violated when he was transferred to OSP without notice or a hearing. (Compl., Doc. 1, ¶¶ 45-50.) To state a procedural due process claim, a plaintiff must establish "(1) that he has a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment, (2) that he was deprived of this protected interest within the meaning of the Due Process

7

Clause, and (3) that the state did not afford him adequate procedural rights prior to depriving him of his protected interest." *Peterson v. Johnson*, 87 F.4th 833, 836 (6th Cir. 2023) (cleaned up). Individual Defendants argue that Plaintiff has not shown a protected interest. (Fender and Wyman Motion to Dismiss, Doc. 5, Pg. ID 35-40; Chambers-Smith and Lambert Motion to Dismiss, Doc. 6, Pg. ID 54-56.) And, even if he had, Individual Defendants argue that Plaintiff has not shown a lack of procedural protections before the deprivation of that interest. (Fender and Wyman Motion to Dismiss, Doc. 5, Pg. ID 35-40; Chambers-Smith and Lambert Motion to Dismiss, Doc. 6, Pg. ID 54-56.)

"To determine whether a liberty interest is implicated in a prison setting, the interest must be limited to freedom from restraint which imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Ford v. Harvey*, 106 F. App'x 397, 399 (6th Cir. 2004) (quotation omitted). "To determine whether changed conditions are atypical and significant, a reviewing court considers both the duration and the nature of the more restrictive confinement relative to prison norms and to the terms of the individual's sentence." *Williams v. Lindamood*, 526 F. App'x 559, 562 (6th Cir. 2013) (quotation omitted).

Institutional transfers generally do not implicate a liberty interest. *See Workman v. Wilkinson*, 23 F. App'x 439, 440 (6th Cir. 2001) (citing *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976) ("Even in the absence of a disciplinary conviction, a state may transfer a prisoner to a less desirable facility without implicating the Due Process Clause.")). That said, the Supreme Court has found that an inmate's transfer to OSP establishes a liberty interest. *See Wilkinson v. Austin*, 545 U.S. 209, 223-24 (2005). In reaching this conclusion, the

8

Supreme Court found that "given the combination of extreme isolation of inmates, prohibition of almost all human contact, indefinite duration of assignment, and disqualification for parole consideration of otherwise eligible inmates," a transfer to OSP imposes atypical and significant hardships on an inmate. *Jarrett v. Greene*, No. 1:22-CV-456, 2022 U.S. Dist. LEXIS 193839, at *31-32 (S.D. Ohio Oct. 24, 2022) (citing *Wilkinson*, 545 U.S. at 223-24). As Plaintiff has a protected liberty interest in not being transferred to OSP, his transfer to OSP constitutes a deprivation of that interest.

Individual Defendants nevertheless argue that Plaintiff lacks a liberty interest in not being transferred to OSP because he may have experienced less restrictions while housed there. (Fender and Wyman Motion to Dismiss, Doc. 5, Pg. ID 38; Chambers-Smith and Lambert Motion to Dismiss, Doc. 6, Pg. ID 55.) Individual Defendants allege that OSP has begun to accept lower security level inmates and house them with fewer restrictions. (Fender and Wyman Motion to Dismiss, Doc. 5, Pg. ID 38; Chambers-Smith and Lambert Motion to Dismiss, Doc. 6, Pg. ID 55.) As Plaintiff does not allege his security level at OSP, Individual Defendants maintain that the Court should infer that Plaintiff was housed at OSP with less restrictions. (Fender and Wyman Motion to Dismiss, Doc. 5, Pg. ID 38; Chambers-Smith and Lambert Motion to Dismiss, Doc. 6, Pg. ID 55.) However, the case cited by Individual Defendants in support of this argument, *Woodson v. Bowen*, does not stand for this assertion. *See* 2022 U.S. Dist. LEXIS 54749, at *11. In *Woodson*, the court noted in passing that the plaintiff did not list his security classification, and dismissed the plaintiff's due process claim because he failed to show that he was denied procedural protections. *See id.* To be sure, at this stage of the litigation, the Court must construe the

9

Complaint in the light most favorable to Plaintiff. *Twombly*, 550 U.S. at 554-55. The Court cannot simply infer that Plaintiff was housed with lower restrictions, and Individual Defendants' argument fails to show the lack of a liberty interest.

Individual Defendants also argue that Plaintiff's transfer to OSP does not establish a deprivation of a liberty interest because he was not assigned to OSP for an indefinite period of time. (Fender and Wyman Motion to Dismiss, Doc. 5, Pg. ID 37; Chambers-Smith and Lambert Motion to Dismiss, Doc. 6, Pg. ID 55.) In support of this assertion, Individual Defendants cite *Bishwai v. Ne Ohio Corr. Ctr.*, which states that "[w]hen a liberty interest is at stake, the loss of liberty must be more than inconsequential; it must extend the duration of the prisoner's sentence or be an atypical or significant deprivation." 628 F. App'x 339, 344 (6th Cir. 2014) (citation omitted). While Plaintiff's transfer to OSP did not extend the duration of his sentence, the transfer still satisfies *Bishwai* because a transfer to OSP constituted an atypical and significant deprivation. *See Wilkinson*, 545 U.S. at 223-24. To be sure, the Supreme Court did not find that a transfer to OSP was an atypical and significant deprivation only when an inmate was transferred to OSP indefinitely. *See id.* Rather, the fact that an inmate had the potential to stay at OSP indefinitely weighed in favor of finding that the transfer constituted an atypical and significant deprivation. *Id.* Individual Defendants' argument therefore fails to show that Plaintiff's transfer to OSP did not establish a deprivation of Plaintiff's liberty interest.

Having established a deprivation of a liberty interest, the Court next considers whether Plaintiff was provided procedural protections prior to said deprivation. The *Wilkinson* Court found that Ohio's policy for transferring inmates to OSP—which

10

includes various hearings and appeals before transfer can be ordered—is "adequate to safeguard an inmate's liberty interest in not being assigned to OSP." *Wilkinson*, 545 U.S. at 298. Plaintiff does not challenge Ohio's current policies for transferring an inmate to OSP. (*See* Compl., Doc. 1.) Rather, Plaintiff alleges that Defendants failed to follow any procedure prior to the transfer, thus demonstrating that he was denied due process. (*Id.* at ¶¶ 45-50.)

Individual Defendants argue that the failure to follow Ohio's policy for OSP transfers is not enough to show a lack of procedural protections. (*See* Fender and Wyman Motion to Dismiss, Doc. 5, Pg. ID 39-40; Chambers-Smith and Lambert Motion to Dismiss, Doc. 6, Pg. ID 55-56.) But, the cases cited by Individual Defendants in making this argument do not support such a conclusion. Rather, those cases hold that the failure to follow standard procedure is insufficient to establish a liberty interest—not that such failure is insufficient to show a lack of procedural protections. *See, e.g., Olim v. Wakinekona*, 461 U.S. 238, 250-51 (1983). The Court has already determined that Plaintiff has a liberty interest in not being transferred to OSP. *Wilkinson*, 545 U.S. at 223-24. The question now is whether procedural protections were taken before the deprivation of this interest. *Peterson*, 87 F.4th at 836. Plaintiff alleges that none were. (Compl., Doc. 1, ¶¶ 44-50.) Individual Defendants have pointed to no caselaw suggesting that due process can be satisfied when no protective measures are used before the depravation of an established liberty interest.

The failure to follow Ohio's policy on transfers to OSP—let alone any other procedural protections—may constitute a procedural due process violation against

11

Plaintiff. *See Birdsong v. Ponton*, No. 3:14-CV-702, 2015 U.S. Dist. LEXIS 154101, at *10-11 (E.D. Va. Nov. 13, 2015) (transfer to supermax prison without following state's procedural safeguards was sufficient to allege a procedural due process violation). However, as will be explained below, Plaintiff has not shown that any of the Individual Defendants were personally involved in the decision to transfer him.

### i. Personal Involvement

"When pleading a [§] 1983 claim, a plaintiff must [] establish that each defendant was personally involved in the activities which form the basis of the allegedly unconstitutional behavior." *Williams v. Warden, Chillicothe Corr. Inst.*, No. 2:23-CV-1042, 2024 U.S. Dist. LEXIS 18676, at *6 (S.D. Ohio Feb. 2, 2024) (quotation omitted). In other words, individual liability "must be based on the actions of that defendant in the situation that the defendant faced, and not based on any problems caused by the errors of others, either defendants or non-defendants." *Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir. 1991).

Individual Defendants argue that, even if Plaintiff's transfer was unconstitutional, Plaintiff has presented no allegations that they were personally involved in the transfer to attach § 1983 liability. (Fender and Wyman Motion to Dismiss, Doc. 5, Pg. ID 29-31; Chambers-Smith and Lambert Motion to Dismiss, Doc. 6, Pg. ID 49-51.) In response, Plaintiff admits that Fender was not personally involved, and requests that he be dismissed from this action. (Plaintiff's Response to Fender and Wyman Motion, Doc. 16, Pg. ID 95.) But, Plaintiff argues that the Court should assume that Wyman, Chambers-Smith, and Lambert were somehow involved with Plaintiff's transfer based on their

12

leadership roles. (*Id.* at Pg. ID 96; Plaintiff's Response to Chambers-Smith and Lambert's Motion, Doc. 15, Pg. ID 89-90.)

"The mere existence of supervisory relationship to the actual wrongdoer is not enough to establish personal liability." *McKinney v. Kasich*, No. 2:15-CV-2043, 2016 U.S. Dist. LEXIS 39519, at *16 (S.D. Ohio Mar. 25, 2016) (citation omitted). A "§ 1983 claim must fail against a supervisory official unless the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Cardinal v. Metrish*, 564 F.3d 794, 802-03 (6th Cir. 2009). "At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (quotation omitted).

Plaintiff has not alleged that Individual Defendants were personally involved in the allegedly unconstitutional conduct. Plaintiff's only allegations concerning Individual Defendants center around identifying their specific roles within ODRC or NOECC. (Compl., Doc. 1, ¶¶ 9-11, 14.) Plaintiff provides no allegations relating the Individual Defendants to Plaintiff's transfer. (*See id.*) Plaintiff does not allege that Individual Defendants "encouraged" or "directly participated" in the alleged misconduct. *Cardinal*, 564 F.3d at 802-03. Nor does Plaintiff allege that the Individual Defendants "implicitly authorized, approved or knowingly acquiesced" to the alleged misconduct. *Grinter*, 532 F.3d at 575. So, even if Plaintiff's transfer to OSP constitutes a due process violation, Plaintiff's § 1983 claims against Individual Defendants cannot proceed because Plaintiff failed to identify Individual Defendants' personal involvement in the alleged

misconduct.

* * *

Thus, Plaintiff's § 1983 claims against Individual Defendants in their individual capacity must be dismissed.

## II. Official Capacity and Core Civic § 1983 Claims

The Court now turns to Plaintiff's § 1983 claims against Core Civic and Individual Defendants in their official capacities. (*See* Compl., Doc. 1, ¶¶ 37-50.)

Before considering the substance of the official capacity § 1983 claims, the Court must first identify the proper entity that these claims attach to. Official-capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citation omitted). Chambers-Smith and Lambert are allegedly employed by ODRC. (Compl., Doc. 1, ¶¶ 9-10.) So, Plaintiff's official capacity claims against Chambers-Smith and Lambert are "construed as claims against the State of Ohio." *Turner v. Mental Health Admin.*, No. 1:20-CV-2571, 2021 U.S. Dist. LEXIS 28096, at *6 (N.D. Ohio Feb. 16, 2021). Fender and Wyman allegedly work at the NEOCC, though Plaintiff does not identify whether they are employed by ODRC or Core Civic. (*See* Compl., Doc. 1, ¶¶ 12, 15.) The Court, then, cannot determine whether Plaintiff's official capacity § 1983 claims against Fender and Wyman attach to Ohio or Core Civic. In any event, as discussed below, Plaintiff's § 1983 claims would neither survive against Ohio nor Core Civic.

Plaintiff's § 1983 claims against Ohio would fail under the Eleventh Amendment. The Eleventh Amendment operates as a bar to federal-court jurisdiction when a private

14

citizen sues a state or its instrumentalities without the state's express consent. *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1983); *Lawson v. Shelby Cnty.*, 211 F.3d 331, 334 (6th Cir. 2000). This prohibition applies to "all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments." *Thiokol Corp. v. Mich. Dep't of Treasury*, 987 F.2d 376, 381 (6th Cir. 1993) (citation omitted). Though, Eleventh Amendment immunity "does not apply if the lawsuit is filed against a state official for purely injunctive relief enjoining the official from violating federal law." *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) (citing *Ex Parte Young*, 209 U.S. 123, 155-56 (1908)). Ohio has not waived its Eleventh Amendment immunity in federal courts. *Mixon v. State of Ohio*, 193 F.3d 389, 397 (6th Cir. 1999). So, Plaintiff's § 1983 claims against Ohio — in which he only seeks monetary damages — fails under the Eleventh Amendment.

Plaintiff's § 1983 claims against Core Civic also fail. When a private entity like Core Civic "performs the traditional state function of operating a prison," it "acts under the color of state law for purposes of § 1983." *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003); (Compl., Doc. 1, ¶ 15.) To state a § 1983 claim against Core Civic, Plaintiff must show that the alleged deprivation of his rights was due to a policy or custom of Core Civic. *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978); *Thomas*, 55 F. App'x at 749. Plaintiff does not allege that his injuries were the result of an unconstitutional policy or custom of Core Civic. (*See* Compl., Doc. 1.) Consequently, his § 1983 claims against Core Civic would not survive.

Thus, Plaintiff's § 1983 claims against Core Civic and Individual Defendants in their official capacity must also be dismissed.

## CONCLUSION

Based on the foregoing, the Court **ORDERS** the following:

1. Defendants Doug Fender and Investigator Wyman's Motion to Dismiss (Doc. 5) is **GRANTED**;

2. Defendants Annette Chambers-Smith and Chris Lambert's Motion to Dismiss (Doc. 6) is **GRANTED**;

3. Defendant Core Civic Corporation's Motion for Joinder and dismissal (Doc. 27) is **GRANTED**;

4. Plaintiff's claims against Defendants Doug Fender, Assistant Investigator Wyman, Annette Chambers-Smith, Chris Lambert, and Core Civic Corporation are **DISMISSED**;

5. This case is **TERMINATED** from the Court's docket.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: *Matthew W. McFarland*
JUDGE MATTHEW W. McFARLAND