**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| YUSEF BROWN-AUSTIN, | Case No. 1:23-cv-478 |
| Plaintiff, | McFarland, J. |
| | Bowman, M.J. |
| v. | |
| ANNETTE CHAMBERS-SMITH, et al., | |
| Defendants. | |

**REPORT AND RECOMMENDATION**

On July 28, 2023, Plaintiff, a state prisoner currently incarcerated at the Southern Ohio Correctional Facility, paid the full filing fee and filed a verified complaint through retained counsel against multiple Defendants. The Court dismissed two Defendants based on Plaintiff's failure to serve them, and granted motions to dismiss by all remaining Defendants, resulting in the entry of final judgment on August 22, 2024. (Doc. 30, 31, 32). Plaintiff did not timely appeal. Instead, on January 28, 2025, Plaintiff filed a "pro se" post-judgment motion seeking to reopen this case pursuant to Rule 60(b), Fed. R. Civ. P. In addition to his motion for Rule 60(b) relief, Plaintiff has moved for the issuance of a "Show Cause" order to be directed to his former counsel.

Plaintiff's post-trial motions have been referred to the undersigned magistrate judge for initial consideration and report and recommendation ("R&R"). For the reasons that follow, the undersigned now recommends that both motions be DENIED.

**I.  Procedural Background of Three Related Cases**

Although he now proceeds pro se, Plaintiff originally filed three separate but related cases in this Court through counsel – each time, paying the full filing fee. Plaintiff's first

case (No. 1:23-cv-475-MRB) and the above-captioned case were filed within a day of each other on July 27 and July 28, 2023, respectively. Plaintiff's third case (No. 1:24-cv-397-MWM-SKB) was filed almost exactly one year later. In order to provide context for the motions in the above-captioned case, the undersigned takes judicial notice of relevant allegations and proceedings in all three cases.

**Plaintiff's First Case: No. 475**

Through counsel, Plaintiff filed his first case against eleven defendants on July 27, 2023. *See Brown-Austin v. Chambers-Smith, et al.*, No. 1:23-cv-475-MRB. ("No. 475".) A civil cover sheet that accompanied the complaint designates the case as one filed pursuant to the civil rights statute, 42 U.S.C. § 1983. (*See* No. 475., Doc. 2.) But the original complaint contains only a cursory reference to that statute in a single heading. (*See* No. 475., Doc. 4, PageID 21.) In contrast to the heading, the body of the original complaint sets out a single claim under civil RICO, alleging predicate violations and that Defendants "engaged in a pattern of corrupt activity which caused injury to the Plaintiff." (*See* No. 475, Doc. 4, PageID 31 (heading); *see also id.* ¶¶ 37-50, citing 18 U.S.C. §§ 1961(1), 1962(c) and 1964(c).)

After initiating suit with a single RICO claim, Plaintiff filed an amended complaint in October 2023 that entirely deleted his RICO claim in favor of pleading two new causes of action under 42 U.S.C. §§ 1983 and 1981. (*See* No. 475, Doc. 7 ¶6, PageID 41.) Plaintiff's omission of his RICO claim in the amended complaint amounted to a voluntary dismissal of that claim. In the amended pleading, Plaintiff instead alleged that Defendants had violated his rights under the First and Fourteenth Amendments as follows: (1) "Defendants engaged in a pattern of retaliation against the Plaintiff's first amendment

2

rights to employ the grievance process," (*id*., PageID 51-52), and (2) "Defendants violated Plaintiff's right to procedural due process by failing to give him written notice and a hearing prior to his being transferred to the Ohio State Penitentiary." (*Id*., PageID 55.) Plaintiff filed a second amended complaint on January 15, 2024 that continued to plead the same two retaliation and procedural due process claims. (*See* No. 475, Second Amended Complaint, Doc. 17.)

In supporting factual allegations, Plaintiff alleged that he was transferred to the Northeastern Ohio Correctional Center ("NEOCC") in 2017. NEOCC was run by Defendant CoreCivic,[1] a Tennessee corporation "that runs private prisons throughout North America," including NEOCC under contract with the State of Ohio. (*Id*., ¶ 20.) At NEOCC, Plaintiff alleges that he and other gang members were tasked to provide security at the prison to "keep the peace." (*Id*., ¶ 22; *see also id*., ¶¶ 21-32.) Plaintiff's First Amendment retaliation claim arises from his transfer from NEOCC to OSP on July 29, 2022. Plaintiff alleges that he was transferred after he refused to retrieve a contraband handgun, filed "a direct grievance to the ODRC Chief Inspector about the events at NEOCC and the ICR he filed," and after his brother contacted the Ohio State Highway Patrol. (*Id*., ¶¶ 36, 58-59, 62.) Plaintiff alleges that his transfer from NEOCC "was obviously motivated by his threatening to expose how NEOCC was run." (*Id*., ¶ 59.)

Upon arriving at OSP, Plaintiff submitted additional informal grievances and was quickly transferred again from OSP to the Southern Ohio Correctional Facility ("SOCF"). (*Id*., ¶¶ 39-41.) In addition to his transfers first to OSP and then to SOCF, Plaintiff alleges

---

[1] Plaintiff mistakenly identifies the name of this Defendant as "Core Civic Corporation." In the above-captioned case, Defendant represents that its correct name is "CoreCivic, Inc."(*See* No. 1:23-cv-478-MWM-SKB, Doc. 27.)

3

that he was falsely charged and found guilty at an RIB hearing on August 1, 2022 regarding his prior involvement in an inmate assault at NEOCC.[2] He was told that the finding of guilt and subsequent adverse impact on his security level on August 11, 2022 was "in retaliation for his filing a lawsuit against ODRC and CORE CIVIC."[3] (*Id.*, ¶¶44, *see also, generally,* ¶¶42-45, 63-64.) He alleges other unknown inmates and guards at SOCF committed additional acts of retaliation. (*Id.*, ¶¶ 47-50.)

In a second due process claim included in No. 475, Plaintiff alleges that Defendants violated his Fourteenth Amendment right to procedural due process because his transfer to OSP was conducted without the requisite notice and a hearing. (*Id.*, ¶¶ 74-75.)

State Defendants Chambers-Smith and Lambert moved to dismiss both claims in No. 475, as did Core Civic Defendants Fender and Wyman.[4] In addition to filing a belated response, Plaintiff moved to enlarge the time permitted for service on several unserved Defendants. But the Court denied Plaintiff's motion to extend time to perfect service based on counsel's failure to show "good cause" and lack of diligence. (Doc. 42.) Following that adverse ruling on service but before the Court issued a decision on Defendants' motions to dismiss, on August 8, 2024, Plaintiff voluntarily dismissed No. 475 without prejudice.

**Plaintiff's Second Case: No. 478**

On July 28, 2023, one day after filing No. 475, Plaintiff's counsel filed the above-captioned case, No. 1:23-cv-478-MWM-SKB ("No. 478"). Plaintiff's second case named

---

[2]Based on context, the undersigned infers that the RIB hearing was held at SOCF.
[3]Plaintiff did not file his first lawsuit against ODRC and CoreCivic in this Court until July 27, 2023. Thus, any allegation that Defendants informed Plaintiff in August **2022** that his security level was being adjusted "in retaliation for …filing a lawsuit" in July **2023** is not plausible.
[4]The four individuals who moved to dismiss pointed out that Plaintiff had failed to timely serve seven individuals. The State of Ohio appeared as an "interested party" on behalf of three unserved individuals (Davis, Rush, and Oppy) but the remaining unserved CoreCivic Defendants did not appear.

seven of the eleven defendants named in No. 475.[5] The civil cover sheet attached to No. 478 identifies the cause of action as a "[p]rivate action related to RICO." (Doc. 1-1.) But as in No. 475, the body of the complaint does not match the cover sheet. Rather than a RICO claim, the complaint in this case consists of two civil rights claims that are virtually identical to the claims in No. 475: (1) that "Defendants engaged in a pattern of retaliation against Plaintiff's First Amendment rights to employ the grievance process" and (2) that "Defendants violated Plaintiff's right to procedural due process by failing to give him written notice and a hearing" before transferring him to the OSP. (Doc. 1, PageID 12, 15.)

In another parallel, two CoreCivic Defendants (Fender and Wyman) and two State Defendants (Chambers-Smith and Lambert) filed separate motions to dismiss for failure to state a claim. Plaintiff eventually responded to both motions. But because Plaintiff's counsel also had failed to serve some defendants in No. 478, the Court issued a "Show Cause" Order warning Plaintiff that it planned to dismiss Defendants Deputy Warden, Unit Manager Douglas, and Core Civic Corporation for failure of service. After Plaintiff responded to that order, the Court extended the time for Plaintiff to perfect service. When Plaintiff later obtained service on Core Civic Corporation, that defendant filed a third motion to dismiss.[6]

On August 22, 2024, the Court granted all three of Defendants' motions, dismissing all remaining claims on the merits. Plaintiff did not appeal. But on January 28, 2025,

---

[5]The seven Defendants named in both No. 475 and No. 478 include: Annette Chambers-Smith, Doug Fender, [unnamed] Deputy Warden, Unit Manager Douglas, Assistant Investigator Wyman, CoreCivic Corporation, and Chief Inspector Chris Lambert. The four individuals named in No. 475 but not in No. 478 are former NEOCC Warden David Bobby, SOCF Warden Cynthia Davis, SOCF Hearing Officer Ryan Rush, and SOCF Unit Management Chief/Deputy Warden J. Oppy.

[6]Because Plaintiff never obtained service on the Deputy Warden or Unit Manager Douglas, the Court dismissed them without prejudice.

5

Plaintiff filed a pro se motion to vacate the Court's judgment under Rule 60(b), Fed. R. Civ. P., and to consolidate it with a third case, No. 1:24-cv-397-MWM-SKB.

**Plaintiff's Third Case: No. 397**

On July 29, 2024, a year after filing his first two cases and weeks before he voluntarily dismissed No. 475 and received an adverse judgment in No. 478, Plaintiff filed his third civil rights case, No. 1:24-cv-397-MWM-SKB ("No. 397".) No. 397 is the only case that remains open on the Court's active docket. Through an R&R filed this day, the undersigned recommends dismissal of Plaintiff's Second Amended Complaint in No. 397 for all but two distinct claims that Plaintiff alleges against Defendants Davis and Oppy. The same R&R recommends the denial of Plaintiff's motion to amend his complaint to add a civil RICO claim and to supplement or correct his existing claims in No. 397.

**II.    Plaintiff's Rule 60(b) Motion**

Plaintiff asks this Court to set aside the adverse judgment entered against him on August 22, 2024 in order to reopen this case to consider a civil RICO claim. Assuming the Court will grant that relief, he further asks the Court to consolidate this case with No. 397 and to permit him to amend his claims in the newly consolidated case. As authority for his request to vacate judgment and reopen this closed case, Plaintiff relies on Rule 60(b)(1), (3), or (6), Fed. R. Civ. P.  Plaintiff is not entitled to relief under any of the referenced provisions.

When a case has been decided on the merits as in this case, courts are required to consider three factors under Rule 60(b)(1): "'(1) culpability—that is, whether the neglect was excusable; (2) any prejudice to the opposing party; and (3) whether the party holds a meritorious underlying claim or defense.'" *Yeschick v. Mineta*, 675 F.3d 622, 628 (6th

6

Cir. 2012) (quoting *Flynn v. People's Choice Home Loans, Inc.*, 440 Fed. Appx. 452, 457-58 (6th Cir. 2011)). Plaintiff first seeks relief under Rule 60(b) on grounds that this Court made a mistake and "simply overlooked the plaintiff's entire civil RICO claims in this action." (Doc. 39, PageID 189.) Plaintiff points out that despite a reference to RICO on the civil docket sheet, no RICO claims were addressed in Defendants' motions to dismiss, or in the Court's opinion dismissing the complaint. But a civil docket sheet is not a pleading. And Defendants' motions to dismiss, Plaintiff's responses to those motions, and the Court's prior opinion discussed all relevant claims in his complaint, which did not include any civil RICO claims.

Plaintiff alternatively argues that this Court should grant him relief under Rule 60(b)(3) because his attorney lied to him about pleading a RICO claim and committed fraud. But Rule 60(b)(3) limits relief to when the alleged "fraud" is perpetrated by an opposing party. The provision has no application here, where Plaintiff alleges "fraud" by his own attorney.

Last, Plaintiff seeks relief under Rule 60(b)(1) for "mistake, inadvertence, surprise, or excusable neglect," or under the catchall provision of Rule 60(b)(6) for "any other reason that justifies relief." Plaintiff claims that his attorney did not do as Plaintiff had instructed him and therefore "acted without authority" when he failed to include a valid RICO claim. *See, generally U.S. v. Reyes*, 307 F.3d 451, 455 (6th Cir. 2002) (holding that Rule 60(b)(1) "is intended to provide relief in only two situations: (1) when a party has made an excusable mistake or an attorney has acted without authority, or (2) when the judge has made a substantive mistake of law or fact in the final judgment or order"). According to Plaintiff, the Court should vacate its judgment because Plaintiff mistakenly

7

relied on his attorney to follow his instructions. Alternatively, Plaintiff argues that his attorney's "gross negligence" provides grounds for relief under Rule 60(b)(6).

Professional negligence or malpractice does not provide grounds for relief under Rule 60(b). In general, "'clients must be held accountable for the acts and omissions of their attorneys,' …who are, after all, those clients' 'freely selected agent[s].'" *United States v. Munoz,* 605 F.3d 359, 368 (6th Cir. 2010) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs., Ltd. P'ship,* 507 U.S. 380, 397 (1993)). Plaintiff admits that counsel sent him a copy of the complaint in this case before filing it. In fact, Plaintiff verified "under penalty of perjury" that he had read the complaint, knew the contents thereof (which clearly did not include a RICO claim), and that the allegations were "true and accurate." (Doc. 1, PageID 18.) Although Plaintiff now claims that his attorney promised Plaintiff to correct factual errors after the complaint was filed and made multiple additional misrepresentations, the correspondence that Plaintiff has filed of record does not wholly support Plaintiff or exonerate him from all culpability. For one thing, the correspondence does not differentiate between Plaintiff's three cases, leaving plenty of room for (mis)interpretation and leaving this Court to guess at the case to which each communication pertains. In short, while counsel's communication is sub-optimal, Plaintiff's own garbled communications and continued reliance on his interpretation of his attorney's statements (even in the face of conflicting or contrary information) appears to have contributed to misunderstandings and errors.[7]

---

[7]Plaintiff's counsel notified him of the dismissal of No. 478 the day after the Court's ruling, on August 23, 2024. (Doc. 44-1, PageID 288). Two days later, Plaintiff acknowledged that he was already aware of the dismissal and questioned whether counsel was lying about several things based on information he had learned from his father's attorney. (*Id.*, PageID 289-290). In response, Plaintiff's former counsel acknowledged making mistakes, and provided Plaintiff with the address of the Office of Disciplinary Counsel and his malpractice carrier. (*Id.*, PageID 291-293, 296). Plaintiff, who represents himself to be a trained paralegal, responded by stating his intention to continue employing counsel. (*Id.*, PageID 294.)

But perhaps the most obvious reason for denying Rule 60(b) relief is that Plaintiff cannot possibly present any meritorious claim even if the Court were to vacate the existing judgment on his § 1983 claims. *See Massiah v. Tenn. State University*, No. 3:21-cv-00066, 2022 WL 16722341 *6 (M.D. Tenn. Nov. 4, 2022) (denying relief under Rule 60(b) where counsel's errors were "garden-variety inexcusable neglect," and plaintiff had failed to show a likelihood of relief on the merits if the court did grant Rule 60 relief). Plaintiff primarily seeks to plead a civil RICO claim. He has moved to plead the same claim in a tendered Third Amended Complaint in No. 397, the ongoing case with which he seeks to consolidate this case. Plaintiff's tendered complaint in No. 397 and representations made in this case confirm that he cannot state a civil RICO claim as a matter of law.

The civil RICO statute provides a private cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962 …." 18 U.S.C. § 1964(c). Under the statute, "the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). An injury to the plaintiff's "business or property" ordinarily excludes his personal injuries. *See Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 564-65 (6th Cir. 2013), overruled on other grounds in *Medical Marijuana, Inc. v. Horn*, 145 S.Ct. 931 (2025). "Recovery for physical injury or mental suffering is not allowed under civil RICO because it is not an injury to business or property." *Fleischhauer v. Feltner*, 879 F.2d 1290, 1300 (6th Cir. 1989). In other words, RICO "[p]laintiffs need to show they suffered a commercial injury." *Compound Prop. Mgmt. LLC v. Build Realty, Inc.*, 343 F.R.D. 378, 406 (S.D. Ohio 2023).

9

Plaintiff's proposed RICO claim is based on his contention that all Defendants violated RICO by engaging in an enterprise "to maximize profits" at NEOCC by "chronically understaffing NEOCC and by using slaves" (i.e., Plaintiff and other gang leaders) to provide security and keep violence at NEOCC at a low enough level that CoreCivic would not lose its contract with ODRC. (*See* No. 397, Doc. 33-1, ¶¶ 59-69.) But Plaintiff fails to allege that he has suffered any type of commercial injury to his business or property as a result of the purported RICO violations. Instead, Plaintiff alleges only that the RICO violations caused him to lose a scholarship which will impact Plaintiff's future earnings, and indirectly resulted in a conduct report that will negatively impact his parole hearing. (*Id*., ¶ 69.) He also claims he was damaged by being moved to an Ohio State prison "far away from Stark County and his family." (*Id.*)

Those type of personal injuries alleged by a prisoner are insufficient as a matter of law to satisfy the statutory prerequisite for standing under civil RICO. *See Lee v. Michigan Parole Bd*., 104 Fed. Appx. 490, 493 (6th Cir. 2004); *Looper v. Gibson,* 63 Fed. Appx. 877, 879 (6th Cir. 2003); *Sharp v. Ingham County*, 23 Fed. Appx. 496, 499 (6th Cir. 2001). In fact, courts in this circuit routinely dismiss RICO claims by inmates for lack of standing. *See*, *e.g*., *Crosky v. Ohio Dep't of Rehab. & Corr*., No. 2:09-cv-400, 2012 WL 748408, at *13 (S.D. Ohio Mar. 8, 2012); *Jacobs v. Ohio Dept. of Rehabilitation and Correction*, No. 2:08-cv-713-TPK  2009 WL 1911786, at *5 (S.D. Ohio June 30, 2009) (personal injuries including emotional distress, oppression, duress and intimidation "are precisely the sort of damages that are not recoverable under civil RICO because they do not involve [the prisoner's] business or property."); *Annabel v. Michigan Dept. of Corrections*, No. 1:14-cv-756, 2014 WL 4187675, at *21 (W.D. Mich. Aug. 21, 2014).

In *Medical Marijuana, Inc. v. Horn*, 145 S.Ct. 931 (2025), the Supreme Court recently reaffirmed that §1964(c) excludes recovery for injuries that are solely personal in nature.

> [B]y explicitly permitting recovery for harms to business and property, it implicitly excludes recovery for harm to one's person. See *RJR Nabisco, Inc. v. European Community*, 579 U.S. 325, 350, 136 S.Ct. 2090, 195 L.Ed.2d 476 (2016); *see also* A. Scalia & B. Garner, Reading Law § 10, p. 107 (2012) ("[S]pecification of the one implies exclusion of the other"). But the "business or property" requirement operates with respect to the *kinds* of harm for which the plaintiff can recover, not the *cause* of the harm for which he seeks relief. For example, if the owner of a gas station is beaten in a robbery, he cannot recover for his pain and suffering. But if his injuries force him to shut his doors, he can recover for the loss of his business. In short, a plaintiff can seek damages for business or property loss regardless of whether the loss resulted from a personal injury.

*Medical Marijuana*, 145 S.Ct. at 939 (emphasis original). In the case presented, the only injuries that Plaintiff identifies are personal, and do not reflect any type of commercial injury to his "business" or "property." Therefore, his civil RICO claim fails as a matter of law for lack of statutory standing.

Plaintiff alternatively argues that if only his attorney had filed an amended complaint in No. 478 to make corrections or add allegations as Plaintiff had requested, the Court would not have granted Defendants' motions to dismiss. The undersigned strongly disagrees with Plaintiff's overly optimistic view of the strength of his claims. With respect to nearly identical civil rights claims filed in No. 397, including proposed revisions in Plaintiff's pro se tendered Third Amended Complaint, the undersigned continues to find Judge McFarland's reasons for rejecting those claims on the merits to be highly persuasive. Therefore, the undersigned has recommended denial of a proposed amended complaint as futile in No. 397. *See also Keary v. U.S. Bank Nat. Ass'n ND*, 2013 WL 6241587, at *7 (E.D. Mich. Dec. 3, 2013) (recommending denial of Rule 60(b)(6)

11

motion because even if attorney conduct was so exceptionally bad as to provide grounds for relief, plaintiffs still failed to demonstrate that their underlying claims were meritorious).

### III. Plaintiff's Motion for Issuance of a Show Cause Order

In his second post-judgment motion,[8] Plaintiff asks this Court to issue a "Show Cause" Order to his former attorney under Rule 11(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927. As evidence of counsel's alleged misstatements in drafting the complaint, Plaintiff has attached copies of correspondence with his former attorney dated *prior to* the date that counsel filed Plaintiff's verified complaint.

Plaintiff's motion should be denied. Regardless of what Plaintiff may have told his attorney about the underlying facts of his case before counsel drafted the complaint, there is no question that Plaintiff personally signed and attested to the accuracy of the complaint that his attorney actually filed on July 28, 2023. To the extent that Plaintiff is entitled to any relief, he remains free to seek any appropriate remedy through the institution of disciplinary proceedings or a malpractice suit.

### IV. Conclusion and Recommendation

Accordingly, **IT IS RECOMMENDED THAT:**

1. Plaintiff's motion for Rule 60(b) relief, and to consolidate the re-opened proceeding with No. 1:24-cv-397-MWM-SKB, (Doc. 39) should be **DENIED**;

2. Plaintiff's post-judgment motion for a "show Cause" order (Doc. 53) also should be **DENIED**.

---

[8]Post-trial motions for sanctions under Rule 11 are considered to be "dispositive." *See Massey v. City of Ferndale*, 7 F.3d 506, 510 (6th Cir. 1993). Technically, Plaintiff seeks only the issuance of a "show cause" order relating to the alleged Rule 11 violation and/or violation of 28 U.S.C. § 1927. A request for a "show cause" order alone could be viewed as a non-dispositive motion. But because magistrate judges have limited statutory authority to rule on any post-judgment motions, the recommended disposition is included in this R&R.

12

                                                                                        *s/Stephanie K. Bowman*
                                                                                        Stephanie K. Bowman
                                                                                        United States Chief Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| YUSEF BROWN-AUSTIN, | Case No. 1:23-cv-478 |
| Plaintiff, | McFarland, J. |
| | Bowman, M.J. |
| v. | |
| ANNETTE CHAMBERS-SMITH, et al., | |
| Defendants. | |

**NOTICE**

Under Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).